HARRIET A. LEAVITT & husband *vs.* CITY OF CAMBRIDGE & another.

Middlesex. Jan. 11. — March 6, 1876. COLT & ENDICOTT, JJ., absent.

Under the St. of 1869, *c.* 391, § 5, which provides that "any person" whose land has been filled up for the abatement of the nuisance contemplated by the statute, if "dissatisfied with the assessment of the expense of raising the grade of his said land, may give notice thereof to said mayor and aldermen, within sixty days after he shall receive notice of said assessment, and the city of Cambridge shall thereupon take said land," one who owns as tenant in common an undivided part of such a piece of land may surrender to and require the city of Cambridge to take such interest.

PETITION for a writ of mandamus, dated April 20, 1875, to compel the city of Cambridge to take under the St. of 1869, *c.* 391, certain lands, in which the female petitioner had a certain undivided interest in fee, as tenant in common, to compel the city to file a description thereof in the registry of deeds, and also to compel the mayor of said city to sign said description.

The case was reserved by *Wells*, J., upon the petition, answer and the agreed facts, for the consideration of the full court, in order that the questions raised by the respondents' answer on the construction of the St. of 1869, *c.* 391, might be first determined. The material facts appear in the opinion.

*J. W. Hammond*, for the respondents.

*C. T. Russell*, for the petitioners, was not called upon.

MORTON, J. The statute under which this case arises, in its first three sections, provides that the mayor and aldermen of the city of Cambridge may order the owner of the land within a certain described district, to fill up the same, and, if the owners of any such land fail to comply with such order, the mayor and aldermen may fill it up and collect the necessary expense thereof of such owner. St. 1869, c. 391.

The fourth section provides that "any person entitled to any estate in any part of the land the grade of which shall be so raised by the said mayor and aldermen, who shall be dissatisfied with the assessment of the expense of raising the grade of his land may, within six months after receiving notice of said assessment, make a complaint to the county commissioners in the county of Middlesex," who shall "thereupon order a jury, who shall have power to revise said assessment in the same manner as is provided in chapter forty-three of the General Statutes, in cases where persons are aggrieved by the assessment of damages by selectmen."

The fifth section provides that "instead of making a complaint to the county commissioners, as provided in the preceding section, any person, dissatisfied with the assessment of the expense of raising the grade of his said land, may give notice thereof to said mayor and aldermen within sixty days after he shall receive notice of said assessment, and the city of Cambridge shall thereupon take said land," the title to which shall vest in the city upon its filing a certificate in the registry of deeds. It also provides that any party whose land is so taken may, if he cannot agree with the city as to the damage done to him by such taking, apply to the county commissioners for a jury to determine the damage so done him.

The only question in this case is whether one who owns, as tenant in common, an undivided part of a piece of land filled up by the mayor and aldermen, can require the city of Cambridge to take his interest under the fifth section.

The fourth section is certainly broad enough in its language to include a tenant in common among those to whom it gives a remedy. It embraces all persons who have "any estate in any

part of the land." It is difficult to see why this language was used unless it was intended to include persons who have an estate in the land as tenants in common.

The fifth section provides an alternative remedy, and was clearly intended to apply to the same persons to whom the other remedy is given. It gives to " any person dissatisfied with the assessment," the right to require the city to take his land, " instead of making a complaint to the county commissioners," as provided in the fourth section.

The language of the two sections naturally applies to and includes a tenant in common, and it must be presumed that this construction was intended by the Legislature, unless we find in other parts of the statute, or in its general scope, clear evidence of a different intention.

But the other parts of the statute do not seem to be inconsistent with this construction. The fact that the statute, in other parts, speaks of the " land," instead of the estate or interest of the owner, is not entitled to great weight in determining its true construction. In the construction of statutes the word " land " includes " lands, tenements, hereditaments, and all rights thereto, and interests therein," unless such interpretation " would be inconsistent with the manifest intent of the Legislature, or repugnant to the context of the same statute." Gen. Sts. *c.* 3, § 7.

But the respondents contend that this construction would lead to embarrassments and difficulties in carrying out other parts of the statute. It is undoubtedly true that, under any construction of the statute, there would be embarrassments and difficulties in its administration, where a part of the land filled is owned by several in undivided parts. But they would not be greater under this, than under the construction claimed by the respondents. To take a case which illustrates in the strongest light the difficulties of our construction, suppose a parcel of the land filled by the city to be owned by three tenants in common, in equal shares, one of whom applies for a jury to revise the assessment of damages under the fourth section, another surrenders his land to the city under the fifth section, and the third does nothing, but leaves the city to enforce its lien for the expenses of filling by a sale under the third section. If we construe the word land to mean the estate or interest in land which

the person has with whom the city is dealing, there is no practical difficulty in carrying out the statute. The assessment of the expenses is made as a whole, but it is capable of apportionment according to the interest of the part owners. It is less difficult to apportion the expenses of filling between tenants in common than between adjoining owners. In the case supposed, the city would collect of one tenant in common one third of the expense of filling the whole estate, would hold by surrender one undivided third of the estate, and would collect one third of such expenses by a sale of the undivided third part of the remaining tenant in common.

The construction which leads to this result carries out the general purpose of the statute, which was that each owner of land taken should have the right to elect, whether he would pay the expenses of filling his land and retain his estate, or surrender his estate to the public for a fair compensation, and it protects the rights of the city as well as of the owner.

It renders consistent all the parts of the statute, while the opposite construction would require us to disregard the provision which gives the right of surrender to " any person entitled to any estate in any part of the land " taken.

We are of opinion that the Legislature, by this provision, intended to give any person who owned an undivided interest as tenant in common in land filled by the city, the right to surrender his estate to the city, and therefore that the city is bound to take the interest or estate of the petitioner as a tenant in common in the land described in her petition.

*Alternative mandamus to issue.*