## WALTER FARNSWORTH *vs.* CITY OF BOSTON.

Suffolk. March 17. — Oct. 17, 1876. AMES & MORTON, JJ., absent.

Under the St. of 1873, *c.* 340, § 4, which provides that "any person" whose land has been filled up for the abatement of a certain nuisance in Boston, if "dissatisfied with the assessment of the expense of raising the grade of his said land, may give notice thereof to the city council within six months after such assessment is made, and the city shall thereupon take said land," one who owns an equity of redemption in such land may surrender to and require the city to take such interest.

Under the St. of 1873, *c.* 340, if the city council lays an assessment of the expense of filling land to abate a nuisance, thereby creating in the landowner a right to surrender his estate to the city, it exhausts its authority, and cannot, by vacating the assessment, deprive the landowner of his right to surrender.

Under the St. of 1873, *c.* 340, if a parcel of land has been over-assessed for the expense of filling the same for the abatement of a nuisance, the assessment is not on that account illegal.

Where the order of a city council, in taking land surrendered to the city, requires a description, signed by the mayor, to be filed in the registry of deeds, and the mayor relies upon a vote of the city council, vacating an assessment upon the land, as depriving the owner of his right to surrender, a writ of mandamus, to compel the city to take the land, should issue to the mayor as well as to the city council.

PETITION for a writ of mandamus, filed November 1, 1875, to compel the city council and the mayor of Boston to take certain

lands in Boston, and to file a description thereof in the registry of deeds, and to compel the mayor to sign said description, and for further relief. Hearing before *Devens*, J., who reported the case for the consideration of the full court. The facts appear in the opinion.

*J. P. Treadwell*, for the petitioner.

*W. A. Field*, for other parties having similar interests, was allowed to file a brief.

*J. P. Healy & H. W. Putnam*, for the respondent.

DEVENS, J.    The St. of 1873, *c.* 340, was passed " in order to secure a complete drainage " of a tract which has been known as the Northampton Street District, so as to abate nuisances " and to preserve the public health of the city," and provided that the city council might order the owners of lands therein to raise and fill their lands, with good materials, to such permanent grade as the board of aldermen might deem necessary for such purposes.    If, after proper notice, the owner failed to comply, the city council was to raise the grade, and the necessary expenses thus incurred constituted a lien on the lands thus filled, and might be collected " as is provided by law for the collection of taxes upon real estate and in case of land sold for taxes." Any person, entitled to any estate in the land, dissatisfied with the assessment of the expense of raising, might apply for a jury to assess the same ; or any person dissatisfied might give notice to the city council within six months after such assessment, and it was then the duty of the city to take the land, the title thereof vesting absolutely in the city.    St. 1873, *c.* 340, §§ 1–4.

When the order for filling was made in the present case, the lands of the petitioner, subject to certain mortgages, were owned by W. E. Woodward, and, he having neglected to comply with such order, the city council proceeded to fill them, and afterwards assessed the expense thereof upon Woodward.    The petitioner, having in the mean time become the owner, being dissatisfied with such assessment, gave notice and offered to surrender his estate.    This the city council has neglected to take, but has passed an order vacating the assessment thereon.

It is objected that no mandamus should issue, because the petitioner is unable to offer, and does not offer, an unincumbered

title in fee simple to the lands. In construing the St. of 1869, *c.* 391, a statute intended for a similar purpose, and almost literally the same with the one now before us, so far as the provisions in regard to assessment and surrender are concerned, it was held that the city was compelled to take the title of a tenant in common. *Leavitt* v. *Cambridge,* 120 Mass. 157. But it is suggested that where only an equity of redemption is offered, which may instantly be defeated by a foreclosure of the mortgages, the court will not compel the city to accept the surrender; and that a distinction may be made between the case above cited and the present in this, that there the petitioner offered a title in fee simple to a certain share in the land, an undivided piece of land, and not merely an estate in the land less than a fee. But the 3d and 4th sections of the St. of 1873, *c.* 340, are to be construed together; and when in the 3d section it is provided that "any person entitled to any estate in any land" may apply for a jury, and in the 4th section, that instead thereof "any person dissatisfied with the assessment" upon his said land may give notice of surrender, it must be held that the words "any person," in the latter section, refer to the person more particularly described in the former as "any person entitled to any estate in any land." *Leavitt* v. *Cambridge, ubi supra.* The ownership of an equity of redemption is the ownership of an estate in the land, within the meaning of the statute. Upon its surrender, this estate vests in the city, and the damages which the city is to pay is the value of such equity. As the amount, which the city pays for the estate surrendered, is irrespective of the expenditure made for the improvement, it continues to hold its lien upon the land, as against other estates, not surrendered, which must bear their proportion of such expenditure.

In this view of the case, it is not necessary to consider what are the rights of mortgagees to surrender their interests under their mortgages, or whether the so called surrenders by them in the present case, which expressly reserve their right to receive the amount in full of their mortgage debts, can be treated as absolute abandonments of their rights. The mortgagees are not parties to this petition, and, as the petitioner holds an estate which he may surrender, they are not necessarily so. If the mandamus is to issue, it will only relate to his estate.

The next inquiry presented is whether the order of the city council, made after the petitioner gave notice of his surrender, is a bar to this petition. But, even if we treat the entry of the city upon the land, and filling it to the prescribed grade, as acts done by virtue of a police power intrusted to it, for the abatement of that which has been decided to be a nuisance, and for the preservation of the public health, it was the duty of the city council, when this was done, to assess upon each estate the amount which had been there expended. The right of the land-holder to surrender his estate was not a mere remedy for an excessive assessment; it was one of the modes provided by the statute for the purpose of paying for the proposed improvement. When a surrender is made, the city, so far as the estate surren dered is concerned, is compelled to pay for the expense of the improvement, while the landholder receives the value of his estate independently of it. The statute contemplates first, that the landholder will do the work himself; second, that, if he does not, the city shall, and that he shall pay the expense thereof, giving him the right to apply for a jury to reduce the assessment made upon him, or to surrender his estate, when he has ascertained what the assessment amounts to. The whole expense is to be borne by the landholder, the only liability to which the city is subjected is that of being compelled to take any estate which has been subjected to this charge for filling. The duty, which the city has to perform after it has done the work, is not to adjudicate how much benefit the land has received, but simply to define by an assessment how much has been expended upon each tract. Whether, if it neglected to do this, it could be compelled, after a reasonable time had elapsed, to discharge the duty of thus distributing the expenses of the work, need not now be discussed. The assessment was made upon the lands, and, when that was done, the right of the landowner to surrender was created. The power of the city council was exhausted; it had done all which it was its duty to do, and it had no further authority. *Cambridge* v. *County Commissioners*, 117 Mass. 79. And even if, in case of the invalidity of the assessment, occasioned by error or irregularity, it was competent to have reassessed the expense, as a tax or a betterment may under such circumstances be reassessed, no invalidity was shown. St. 1871, c. 382, § 2.

Gen. Sts. *c.* 11, § 53. The existence of such a power would not give any authority to vacate a valid assessment.

It is contended, however, that no mandamus should issue as to such portion of the petitioner's land as lies south of East Lenox Street, for the additional reason that the assessment thereon included the expense of filling other land not belonging to Woodward, through whom the petitioner has his title. This tract of land included what are marked on the plan as lots 3, 4, 5, and was by order of the city council assessed to Woodward as a tract whose location was on "Harrison Avenue, south of East Lenox Street," for 1794 cubic yards of filling, at $1435.20. It is found as a fact that the number of yards of filling was overstated, thus increasing the amount of the assessment, by including, in the computation of what was done upon Woodward's land, filling which was done upon the strip next to it. But while Woodward's tract was thus over assessed, the assessment was not on that account illegal or void. He had a tract correctly described in the order of the city council, and which was subject to assessment for the amount expended upon it. The error made was an error in computation only. It was of that character which, in case of a tax, entitles the party aggrieved to apply for abatement only, and not to treat it as wrongly assessed. Such an error is intended to be remedied under this statute by giving power to the party assessed to apply for a jury.

As the act of the city council in taking the land requires the approval of the mayor, and as by the answer it appears that the mayor relies upon the vote of the city council of December 30, 1875, vacating the assessment on these lands, the alternative mandamus directing the city to take the estate of the petitioner should run to him as well as to the city council.

*Alternative mandamus to issue.*