BARNSTABLE SAVINGS BANK *vs.* CITY OF BOSTON.

Suffolk.    March 28. — July 31, 1879.    AMES & LORD, JJ., absent

Under the St. of 1873, *c.* 340, § 4, which provides that "any person" whose land
has been filled up for the abatement of a certain nuisance in Boston, if "dissat-
isfied with the assessment of the expense of raising the grade of his said land,
may give notice thereof to the city council within six months after such assess-
ment is made, and the city shall thereupon take said land," a person who has
title by mortgage to such land when the assessment is made, and becomes abso-
lute owner by foreclosure within six months after such assessment, may surren-
der to and require the city to take the land ; and he is not deprived of his right
to surrender by an order of the city council vacating the assessment, nor by the
fact that the amount of the assessment is small, nor by a delay of more than
two years to bring a petition for a writ of mandamus to compel the city to take
the land.

PETITION, filed April 5, 1878, for a writ of mandamus to com-
pel the city council and mayor of Boston to take a parcel of land
in Boston, and to file a description thereof in the registry of
deeds, and to compel the mayor to sign said description, and for
further relief.    The case was submitted to the judgment of this
court upon an agreed statement of facts in substance as follows :

The land in question is situated on Brown Street, in the
Northampton Street District, in Boston.    On May 30, 1872,
this land was owned by Jonas B. Hildreth, who, on that day,
mortgaged the same to the petitioner.    Hildreth continued to
own the land, subject to the mortgage, until March 23, 1875,
when the petitioner, for the purpose of foreclosing the mortgage,
sold the land by public auction, pursuant to the power in the
mortgage, and conveyed the same to Nathan Crocker, who pur-
chased it for the petitioner, and, on April 15, 1875, conveyed it
to the petitioner in fee simple ; and from that day to the present
time the petitioner has continued to be the sole and absolute
owner of the land.

On September 1, 1873, the board of aldermen of the defendant
city, acting under the St. of 1873, *c.* 340, passed an order estab-
lishing the grade for the Northampton Street District; and,
on the same day, the city council of said city passed an order,
directing the owners of land in the district to raise the grade of
their lands to the grade established by the board of aldermen.
The land of the petitioner is included in the land mentioned in

the order of the city council.  Hildreth not having raised the grade of his land in conformity with the order, the city council, on March 2, 1874, notified him to raise all buildings on the land, and to remove all obstacles and rubbish from the same, on or before April 15, 1874 ; and further, that no person, except such as might contract with said city, would be permitted to do any filling upon said district.

Between March 6, 1874, and January 1, 1875, the defendant, by its agents and servants, in pursuance of these orders, entered upon the land of the petitioner and raised the grade thereof. On February 15, 1875, the board of aldermen of said city passed an order charging certain sums upon the estates in said district therein specified, for the necessary expenses incurred by the city in raising the grade upon said estates, and, among others, upon the petitioner's land.  The charge upon the estate of the petitioner for filling is made against Hildreth, and is $8 in amount.  On February 20, 1875, the city treasurer delivered to Hildreth certain bills, demanding payment of assessments made, being $8066.60 in all, and including the above charge of eight dollars ; thereafter, and within six months of the completion of the work aforesaid, namely, on July 20, 1875, the petitioner gave notice to the city council that it was dissatisfied with the above assessment, and that the petitioner surrendered its land, together with all the buildings thereon, to the defendant, under the statute. The defendant has never taken said land, or any part thereof, and on December 31, 1875, the board of aldermen passed an order vacating the above assessment on the land.  The petitioner has continued to the present time to receive the rents from the tenants of said property.

*G. A. King,* for the petitioner.

*E. P Nettleton,* for the defendant.

COLT, J.   Under the St. of 1873, *c.* 340, land of which the petitioner became absolute owner in April 1875 was assessed in February of the same year for the expense incurred by the city in raising the grade.  The petitioner, after it became absolute owner, and within six months after the assessment was made, gave notice of its dissatisfaction, and that it surrendered the land agreeably to the provisions of the act.   It is contended that the city was thereupon required to take the land, and file in the

registry of deeds, within sixty days, a description of the same, together with a statement that it was taken pursuant to the provisions of the act, signed by the mayor. But nothing was done towards taking the land, and, in December following, the city council passed an order by which it attempted to vacate the assessment. The petitioner complains that it is thus deprived of the right to have damages for the taking assessed by the jury, if not agreed on, and prays for a writ of mandamus directing the city council and the mayor forthwith to take the land and file the necessary certificate and description within the sixty days.

When the order establishing the grade in 1873 and the order making the assessment in February 1875 were passed, one Hildreth was owner of the estate, subject to a mortgage containing a power of sale given to the savings bank, the present petitioner. Under this mortgage the land was sold to a person who bought it for the bank, and who conveyed it to the bank in April 1875. The bank gave notice of its dissatisfaction and surrender in the following July.

The right of the bank to surrender is denied, on the ground that it is a personal right limited to whoever may be owner at the time of the assessment. It is provided in the fourth section of the act that "any person dissatisfied with the assessment" may give notice of surrender, and the words "any person" are held to mean the same as the words "any person entitled to any estate," which are used in the third section. *Leavitt* v. *Cambridge*, 120 Mass. 157. The bank in our opinion comes fairly within this description. It had title by mortgage before any of the proceedings for filling the land were commenced, and it became absolute owner of the estate by foreclosure, within the six months allowed for a surrender of the same by the owner. This was precisely the position of the petitioner for a writ of mandamus in *Farnsworth* v. *Boston*, 121 Mass. 173, where the ownership of the equity of redemption had been acquired after the assessment had been made upon another person, and where no objection was made on this ground but that the petitioner had a right to surrender. The expense of filling is by the act made a lien upon the land itself, which attaches to it in the hands of any subsequent owner. The right to surrender is not merely a remedy for an over assessment; it is one of the modes

provided by the act for paying the expense of the improvement when completed. It is a distinct part of a scheme adopted for the purpose of preserving the public health of the city. It is a privilege which becomes vested as soon as the assessment is made and the land is incumbered by the lien. There is no good reason shown why one who becomes an owner subject to this lien should not have the right to surrender within the time fixed, although not the owner when the assessment is made.

It was decided in *Farnsworth* v. *Boston,* above cited, that when the city council has once laid an assessment under this act, it has exhausted its authority, and cannot deprive the owner of his right to surrender, by vacating the assessment. It is the fact that an assessment is made, without regard to the amount of it, which secures the right. The owner may think himself injured by the raising of the grade, whatever be the amount of the assessment upon him, and the right is not taken from him because the amount for which his land is taxed is small.

There is no such delay on the part of the petitioner in applying for a writ of mandamus as should deprive it of the rights secured to it under the act, on the ground of laches. The city has not changed its position, or lost any advantage, by the delay. If it had done its duty, the damage to which the petitioner would have been entitled would have been the value of the land at the time of the taking, less the improvements. It cannot reasonably complain if its value has changed since the surrender. The land is still liable to be sold for the non-payment of the assessment. If the city be not required to take the land, there is no way in which the bank can recover its value; and, in the words of the statute, (Gen. Sts. *c.* 112, § 3,) it becomes necessary, "to the furtherance of justice, and the regular execution of the laws," that the writ of mandamus should be granted.

*Alternative mandamus to issue.*