## City of Cambridge *vs.* Charles Munroe.
### Same *vs.* Margaret Emery.
### Same *vs.* Patrick McGurk.
### Same *vs.* John McGurk & another.

Middlesex.    Jan. 15, 1878. — Jan. 11, 1879.    Jan. 23. — April 10, 1879.
Endicott & Soule, JJ., absent.

The St. of 1872, c. 299, entitled "An Act to provide for the prevention and abatement of nuisances, and the preservation of the public health, in the cities of Cambridge and Somerville," authorizes the respective boards of mayor and aldermen in these cities to establish a grade not less than thirteen feet above mean low-water mark, and provides that such board may order the owners of lands below that grade to raise the same to such grade, and that, in case the owner of any such lands fails to comply with such order, within a certain time, the board of mayor and aldermen may raise the grade, and the expense incurred thereby shall constitute a lien on the land, "as is provided by law for the collection of taxes upon real estate, and in case of land sold for taxes." *Held*, that, after the passage of the act, although the mayor and aldermen constituted the board of health, they could not, under the Gen. Sts. c. 26, acting as such board, order a tract of such land to be filled by the owners thereof, and, on their neglect to fill it, cause the same to be filled; and that the city could not maintain an action of contract for the expense incurred thereby.

FOUR ACTIONS OF CONTRACT. The declaration in each case alleged that the defendant was on May 12, 1874, and had since been, the owner of a lot of land in Cambridge, described by metes and bounds; that, on the day above mentioned, said lot

was, and, until the filling hereinafter named, continued to be, a source of filth, a cause of sickness and a public nuisance, injurious to the public health; that, on the day above mentioned, it was duly adjudged by the board of health of the plaintiff city to be a public nuisance, injurious to the public health, and said board, by a written order, duly ordered the defendant at his own expense to remove said nuisance on or before a time therein named; that this order was duly served upon the defendant, and he had actual notice thereof; that the defendant wholly failed to comply with the order, and thereupon, after such failure, the board caused the nuisance to be removed, and, in so doing, and for that purpose, the plaintiff expended in filling such land a sum named; that the plaintiff has duly demanded the same of the defendant, but the defendant has wholly neglected and refused to pay the same or any part thereof. Writs dated June 21, 1875.

The answer in each case contained a general denial; and averred that, if any such nuisance or filth ever existed, it was not occasioned by the defendant's default, neglect or act, but that the plaintiff and its board of health caused such nuisance and filth to accumulate on the premises, to the injury of the defendant.

At the trial in the Superior Court, before *Brigham*, C. J., without a jury, the following facts appeared:

In 1874, the defendants and others presented a petition to the board of aldermen of the plaintiff city, praying the board " to cause to be abated the nuisance that does now and has existed since the filling in of the land and territory known as West Dock caused by an order from the city of Cambridge under the grade law passed by the Legislature of 1872." This petition was, on March 4, 1874, referred to the board of health, and on May 12, 1874, that board passed the following order : " Ordered, That the several owners thereof be directed, at their own expense, and within twenty days from the service of an attested copy of this order upon them, to abate the nuisance upon the premises owned by them respectively, and situate on Hampshire Street and Webster Avenue, between Portland Street and Bristol Street. Said nuisance being the stagnant water and insufficient drainage." Service of this order was made on May 20, 1874; and on September 7 following, the board of aldermen, acting as the board of health, passed the following order, which was approved by the

mayor on September 10 : " Ordered that the committee on health be and hereby is authorized and instructed to abate the nuisance existing on estates lying between Hampshire Street, Webster Avenue, Portland and Bristol Streets, by filling the same to grade, the respective owners thereof having been directed by order of this board of health dated May 12, 1874, to abate said nuisance, and failed so to do.    The expense thereof to be charged to appropriation for incidental expenses and collected of the respective owners thereof in their several proportions according to law."

By the ordinances of the city of Cambridge, the mayor and aldermen are constituted the board of health.   In pursuance of the above orders, the board of health, under the supervision of the civil engineer of the city, caused the premises of the several defendants to be filled by gravel to grade 13 above mean low-water, that is, grade 18 of city of Cambridge base, which is five feet below low-water mark.   There was no evidence except as herein appears as to how, or when, or where, or under what law, the plaintiff city established any base of grade.   The cost of such filling was as is alleged in the several declarations, and the same was paid from the treasury of the plaintiff city.

The nuisance consisted of stagnant and filthy water, standing from time to time on the premises of the several defendants, caused by cesspools, privies and other sources of filth, and surface water flowing from adjacent land of a higher grade, for which there was no practicable outlet from the defendants' premises into any public sewer, or elsewhere.   Before 1874, the premises of the several defendants were sufficiently drained into West Dock, a creek immediately in the rear of their premises, into which the tide-water flowed from Charles River.   In 1873, the mayor and aldermen, acting as a board of health, ordered and caused West Dock to be filled with gravel to grade 18, and thereby cut off any drainage of the defendants' premises into West Dock.

The defendants contended, and offered evidence to prove, that the condition of their premises, alleged to constitute a nuisance, was directly due to foul and noisome water and mud, which was caused by the backing up of the waters in the act of filling West Dock.   But the judge did not find this to be the fact, although he did find that the filling of West Dock to a grade higher than the

grade of the defendants' premises, before the filling of 1874, was the principal, if not the exclusive, cause of their condition when the acts of the board of health applied to them, by cutting off their previous means of drainage, and exposing them to the flow of surface water from West Dock as it was left when filled; and that neither the board of health nor the city of Cambridge had provided any means of draining the defendants' premises hitherto, nor was such drainage practicable into any previously established sewer of the city.

Upon these facts, the judge ruled that the plaintiff was entitled to recover the sums alleged in the several declarations, and ordered judgments accordingly. The defendants alleged exceptions.

The case was argued at the bar in January 1878, by *C. F. Donnelly*, for the defendants, and *J. W. Hammond*, for the plaintiff. In January 1879, a rescript was entered, sustaining the exceptions, and an opinion filed. The plaintiff thereupon applied to this court for leave to reargue the exceptions, and on this motion the court allowed written arguments to be filed by the same counsel.

AMES, J. Upon a reconsideration of these cases with the aid of the arguments submitted in writing on the motion for a rehearing, we see no reason to change the result already announced, or to alter the opinion in any respect, except by stating the grounds of decision somewhat more fully.

The St. of 1872, c. 299, was passed, as its title imports, "for the prevention and abatement of nuisances, and the preservation of the public health in the cities of Cambridge and Somerville." It was passed for the reason that a portion of the territory of each of these two cities was too low for convenient and proper occupation in its natural condition, and that, in order to secure the sanitary advantages of a complete drainage, it was necessary that these two cities should be entrusted with the power of raising such low lands to a proper level above mean low-water mark. This power is given, not to the boards of health, but to the boards of mayor and aldermen of these cities respectively.

By the fourth section of the statute, the board of mayor and aldermen was authorized to order the owners of lands, the surface of which was below thirteen feet above mean low-water mark, to raise the grade of such lands, "filling up the same with good ma-

terials," ' so as to abate and prevent nuisances, and to preserve the public health of the city." By the fifth section, in case the owner of such land fails to comply with such order within six months after it is served upon him, the board of mayor and aldermen of the city may raise the grade, and all necessary expenses incurred thereby shall constitute a lien upon the land so filled, and may be collected " as is provided by law for the collection of taxes upon real estate, and in case of land sold for taxes.' The remaining sections provide remedies for any party who is dissatisfied with the assessment of the expenses, by petition to the county commissioners for a jury to revise the assessment, or by surrendering his land to the city.

It appears by the bill of exceptions that the premises owned or occupied by these defendants were situated in a part of the city of Cambridge where the natural surface of the soil was so low as to come within the description of land to which the statute above cited might well be considered applicable. It is expressly stated that the nuisance complained of consisted of stagnant and filthy water from cesspools, privies, &c., and surface water flowing from adjacent land of a higher grade, for which there was no practicable outlet from the defendants' premises. It is also found by the judge who tried the cases that the principal, if not the exclusive, cause of this state of things was the filling of West Dock by the city to a grade higher than the grade of the defendants' land, thereby cutting off their drainage and exposing them to the flow of surface water from West Dock.

Such being the condition of the defendants' premises, they presented a joint petition, not to the board of health, but to the board of aldermen, *eo nomine*, for relief from the nuisance, which they describe as having been occasioned by the filling up of the land and territory known as West Dock, caused by an order from the city of Cambridge under the grade law passed in 1872. Upon the facts of the case, they contended that the nuisance was occasioned, not by any act or neglect of their own, but that it resulted directly from the act of the city itself. The aldermen, instead of acting upon this petition, as such, saw fit to refer it to the board of health. It is true that both boards are made up of the same persons, yet the powers of the two boards

are entirely distinct and separate. The result of this reference of the petition was, that the defendants were ordered to fill their lands up to grade at their own expense; and, upon their failure to do so, the aldermen, "as a board of health," caused the city engineer to perform the work. By the bill of exceptions, it appears that the grade to which the lands were raised by the engineer under this order was "grade 13 above mean low-water, that is, grade 18 of city of Cambridge base, which is five feet below low-water mark." It thus appears that the city of Cambridge had established a grade, which must have been under the St. of 1872. The proceedings recognize the existence of a preëxisting and established grade, which the board of health had no authority to establish, but which the board of mayor and aldermen on behalf of the city was authorized to establish by the terms of that statute.

Whatever aspect the case may take upon a new trial, we do not find upon the facts reported anything that satisfies us that the case as presented on this bill of exceptions was one which could be dealt with by a board of health, under the general powers conferred upon it by the Gen. Sts. *c.* 26. If the defendants had a right to claim the benefit of the St. of 1872, they could not be deprived of that right by the determination of the aldermen to act in the matter merely as a board of health. The improvements or operations which that statute has in view might, and ordinarily would, require the filling up of extensive tracts of land, and could rarely, if at all, be effectively carried out by the separate labor of independent landowners, each within the limits of his own land. The cases now before us apparently apply to a tract of land occupied by numerous owners, and bounded on each of its four sides by a street. It may be that no one of these proprietors could fill up his own land to the proper height without encroaching upon, and partially occupying, the land of his neighbors. The statute evidently contemplates the prevention or abatement of nuisances upon a general system, applicable to lots of land belonging to any number of proprietors. If the plaintiff is right in its view of the case, the aldermen, by acting as a board of health, might enclose a large and populous district with a wall or embankment of the height prescribed by the statute, and compel the landowners within the enclosure to

complete the rest of the filling at their own expense, and thus deprive them of all the remedies intended to be given them by the statute.   The law will not bear this interpretation.

The powers conferred upon boards of health by the Gen. Sts. *c.* 26, were intended to provide a summary and speedy remedy for the ordinary case of a local nuisance occasioned by the neglect or mismanagement of an individual upon his own land, which could be removed or abated by him personally.   On the other hand, where the city, by establishing a new grade under the St. of 1872, has created a necessity for filling up lower lands to the prescribed new level, the proceedings must be such as are pointed out by the statute.   It is true that the fourth section in terms provides that the mayor and aldermen may order the owner to raise the grade, but we do not understand this form of expression to give to them any right, if they give such order, to enforce it in any other manner than that statute prescribes, or to take away any of the rights or remedies intended to be secured by it to the landowner.

If these cases come within the terms of the St. of 1872, the only mode in which the city could throw upon the landowners the expense of the raising and filling would be that which is expressly pointed out by the statute itself.   It gives no authority to the city to recover that expense by an action of contract against the landowner, and in that event the present actions could not be maintained.

If, however, it should be found that the case was one in which proceedings under the general power of the board of health could have been maintained under the Gen. Sts. *c.* 26, there still remains a question, upon which we do not now express any opinion, whether it was competent for the board of health to pass an order requiring a numerous body of landowners, taken collectively, to abate a nuisance upon the lands of all of them, produced by a cause affecting all of them; or whether the order should not have been addressed to the proprietors severally, and by name, requiring each to provide for his own land.   However that may be, we find it necessary that there should be a new trial.

*Exceptions sustained.*