JAMES GRACE & others *vs.* BOARD OF HEALTH OF THE CITY OF NEWTON.

GRANVILLE FULLER & others *vs.* SAME.

Middlesex. March 7, 8. — Sept. 7, 1883. DEVENS & W. ALLEN, JJ., absent.

On a petition for a writ of certiorari to quash the proceedings of the board of health of a city, assessing the expense of abating a nuisance under the St. of 1868, *c.* 160, the record showed a petition, addressed to the board of health, which complained of large quantities of stagnant water standing in an open drain between two streets, from which arose such unhealthy odors as to cause great sickness in the neighborhood, and prayed for a hearing; a reference of the same to the next city government; a vote of the board of health, the next year, to view the premises; a view taken; an order that the city engineer, under direction of a committee, be directed to widen, straighten and deepen a watercourse between the two streets, and that the clerk be instructed to notify abutters on the watercourse of a hearing on a certain day, under the St. of 1868, *c.* 160; a warrant issued by the clerk to a constable to notify abutters of the intention of the board of health to enter upon the premises for the purpose of widening, deepening and straightening the brook, and that a hearing would be given, at a time and place named, to all parties interested in the matter, as to the necessity and mode of abating the nuisance caused by the brook, and the question of damages, and of the assessment and apportionment of the expenses thereof; and a notice setting forth these things, and stating that it was in accordance with the St. of 1868, *c.* 160. *Held,* that it sufficiently appeared that the board was attempting to act under this statute. *Held, also,* that the petition was sufficient to give the board jurisdiction.

An assessment cannot be levied, for expenses incurred by a board of health under the St. of 1868, *c.* 160, upon a person to whom notice of the hearing, provided for in § 3, is not given, although he has knowledge of the doing of the work whereby the expenses are incurred.

Under the St. of 1868, *c.* 160, a board of health may act by a committee in abating a nuisance.

It is no ground for a writ of certiorari to quash an assessment levied for expenses incurred under the St. of 1868, *c.* 160, that the expenses were not assessed proportionally upon all persons benefited, or that items were included in the expenses which ought to have been excluded.

If a board of health has given notice of a hearing under the St. of 1868, *c.* 160, § 3, it need not give a new notice of its intention to make an assessment, under § 5.

A report of a committee of the board of health of a city, upon the assessment of damages and benefits sustained by the abatement of a nuisance, under the St. of 1868, *c.* 160, was accompanied by orders drawn in accordance with the report, and by warrants upon the city treasurer for the collection of assessments. The record showed that the report was accepted and the orders and warrants adopted. *Held,* that the adoption of the report sufficiently appeared.

On a petition for a writ of certiorari to quash the proceedings of the board of health of a city in assessing the benefits accruing to any person by the abatement of a nuisance under the St. of 1868, *c.* 160, the respondent's answer alleged that the assessments were made upon the petitioners as owners of certain parcels of

land described in a schedule, and the same were exhibited upon a plan, which sufficiently described the premises, and was used in making the assessments. At the hearing it appeared that the schedule was made after the petition was brought; and that the plan was sufficient to identify each lot. *Held*, that if the assessment was not sufficiently specific for want of a description of the land benefited, it was competent for the board to amend its record, and that the schedule might be considered as such an amendment.

A petition to the board of health of a city described a nuisance as "owing to large quantities of stagnant water standing in an open drain between" two streets of the city. The board of health issued a notice that it was acting under the St. of 1868, c. 160, and abated the nuisance. On a petition for a writ of certiorari to quash the proceedings of the board of health, it did not appear whether the drain was a public or a private one, nor for what purpose it was made; and it appeared to be a watercourse. *Held*, that it could not be said that the nuisance was not such as could be abated under the St. of 1868, c. 160; and that it was too late to take this objection.

Two PETITIONS for writs of certiorari, to quash certain proceedings and orders of assessment of the board of health of the city of Newton. The cases were heard together by *Field*, J., who reserved them for the consideration of the full court, such orders to be made therein as law and justice might require. The facts appear in the opinion.

*C. Robinson, Jr. & G. A. Blaney*, for the petitioners.

*P. Thacher & S. Lincoln*, for the respondent.

FIELD, J. The St. of 1868, c. 160, provides, in a sense, for a public improvement.* By § 3, the mayor and aldermen of a city,

---

* This statute, which is entitled an act extending the provisions of the Gen. Sts. c. 26, relating to the preservation of the public health, is as follows:

"Section 1. When any lands in any city or town are wet, rotten or spongy, or covered with stagnant water, so as to be offensive to persons residing in the vicinity thereof, or injurious to health, the same shall be deemed to be a nuisance, and the board of health or health officer of such city or town may, upon petition and hearing, abate such nuisance in the manner provided in the following sections.

"Section 2. Any one or more persons claiming to be injuriously affected by such nuisance may, by petition, describing the premises upon which such nuisance is claimed to exist, and setting out the nature of the nuisance complained of, apply to the board of health or health officer for its abatement, whereupon such board of health, or health officer, shall proceed to view the premises and examine into the nature and cause of such nuisance.

"Section 3. If upon such examination the board of health or health officer shall be of opinion that the prayer of the petitioner or any part thereof should be granted, he or they shall appoint a time and place for a hearing upon the petition, and before the time so appointed shall cause reasonable notice of

or the selectmen of a town, unless they are the board of health, are to have notice and be heard upon the necessity and mode of abating the nuisance.   By § 5, a proportion of the expense of making the improvements, and keeping them in repair, may be ordered to be borne by the city or town, and the city or town is to pay the damages awarded, and to receive as taxes the benefits assessed.   The statute was enacted for the abatement of something more than a local nuisance upon the land of one person, such as is provided for in the Gen. Sts. *c.* 26, §§ 8–10;  Pub. Sts. *c.* 80, §§ 21 –23.   See *Cambridge* v. *Munroe*, 126 Mass. 496, 501, 502.   It contemplates that lands may be entered upon which are not themselves wet, rotten, spongy or covered with stagnant water, and excavations, embankments and drains made thereupon, in order to abate the nuisance, and that proceedings under the statute are in the nature of taking private property for public use.   In this respect it resembles many special acts which have been passed,

---

the time and place to be given to the petitioners, the persons whose lands it may be necessary to enter upon to abate the nuisance, and any other persons who may be affected by the proceedings, and, except in those cities and towns in which the mayor and aldermen and selectmen constitute the board of health, to the mayor and the chairman of the selectmen, that they may be heard upon the necessity and mode of abating such nuisance, and the questions of damages, and of the assessment and apportionment of the expenses thereof.

" Section 4. Such notice shall be in writing, and may be served by any person competent to serve civil process, upon the mayor and chairman of the selectmen, the petitioners, the owner or occupant of any land upon which it may be necessary to enter, or which may be benefited thereby, or his authorized agent, or by leaving an attested copy of such notice at the last and usual place of abode of such persons; but if the lands are unoccupied, and the owner or agent is unknown, or without the State, the notice to such owner may be served by posting an attested copy thereof upon the premises, or by advertising in one or more public newspapers in such manner and for such length of time as the board of health or health officer may direct.

" Section 5. At the time and place appointed for the hearing, the board of health or health officer shall hear the parties, and, after such hearing, may cause such nuisance to be abated, according to his or their discretion; and for that purpose may enter and make such excavations, embankments and drains upon any lands, and under and across any streets and ways as may be necessary for such abatement:   They shall also determine in what manner and at whose expense the improvements made shall be kept in repair, and shall estimate and award the amount of damage sustained by and benefit

and which have been before this court for construction. St. 1867, *c.* 308: *Dingley* v. *Boston*, 100 Mass. 544. *Cobb* v. *Boston*, 109 Mass. 438, and 112 Mass. 181. St. 1868, *c.* 277. St. 1869, *c.* 391. *Leavitt* v. *Cambridge*, 120 Mass. 157. St. 1872, *c.* 299. *Bancroft* v. *Cambridge*, 126 Mass. 438. St. 1873, *c.* 340. *Farnsworth* v. *Boston*, 126 Mass. 1.

The objection taken in the petition of Grace and others, that the St. of 1868, *c.* 160, is unconstitutional, has not been argued. The general object of the statute is one which it is within the power of the Legislature to effect, whether it be regarded as an exercise of the police power or of the right of eminent domain. The ultimate provision for the assessment of damages is the same as for land taken for a town way. The ultimate provision for the assessment of benefits is not by a jury, but by abatement in the same manner "as other taxes." If this assessment is regarded as a tax for local purposes of a public nature upon those

---

accruing to any person by reason of such improvements, and what proportion of the expense of making and keeping the same in repair shall be borne by the city or town and by any person benefited thereby. The damages so awarded shall be paid by the city or town, and there shall be assessed to the several persons benefited by such improvements his proportionate part, to be ascertained as before provided, of the expense of making and keeping in repair such improvements, and the same shall be included in the next city or town taxes of such persons, and shall be a lien upon the real estate benefited thereby, and be collected in the same manner as other taxes upon real estate, and shall be liable to abatement as other taxes now are.

"Section 6. The boards of health and health officer shall, within thirty days after the abatement of any nuisance in the manner herein before provided, make return to the city or town clerk, of their doings in the premises, which return shall be by him recorded in the city or town books.

"Section 7. If the board of health or health officer shall unreasonably refuse or neglect to proceed in the matter of such petition, the petitioner may apply by petition to the Superior Court, or any justice thereof, who, upon a hearing and good cause shown, may appoint three commissioners, who shall proceed in the manner herein before provided.

"Section 8. Any person aggrieved by the decision of the board of health, health officer or commissioners in their estimate and award of damages, may make complaint to the county commissioners for the county, at any time within one year after return to the city or town clerk, whereupon the same proceedings shall be had as are now provided by law in cases where persons or parties are aggrieved by the award of damages by selectmen for land taken for a town way."

who receive the benefit of the improvement, and is confined to a proportion of the expense of making it and keeping it in repair, the act is not unconstitutional because it contains no provision for a jury. *Howe* v. *Cambridge*, 114 Mass. 388. *Jones* v. *Aldermen of Boston*, 104 Mass. 461, 467. *Dorgan* v. *Boston*, 12 Allen, 223, 234 *& seq.* But, as no objection has been taken to the statute on this ground, we do not further consider it.

The petition of O. F. Clark, and seven others, addressed to the board of health, complained of "large quantities of stagnant water standing in an open drain between Walnut Street and Central Avenue, from which arise such unhealthy and sickening odors and filth as to cause great sickness in the neighborhood," and prayed for a hearing. This was received on October 21, 1878, and on November 18, 1878, was referred to the next city government. By the city government is usually meant the mayor, board of aldermen and common council of a city. But as the board of aldermen of the city of Newton was also the board of health, this may be taken as a reference to the board of health of the next city government. By the records of the board of health of April 21, 1879, it appears that this petition was regarded as still pending, and the board voted to view the premises, which was done, as appears by the records of May 5. On May 19, 1879, it was ordered that the city engineer, under direction of a committee, be " authorized and instructed to widen, straighten and deepen the watercourse running from Walnut Street, ward two, through Central Avenue, Craft and Adams Streets, to brook; " and "the clerk was instructed to notify abutters on watercourse, from Walnut Street to Laundry Brook, of a hearing, on Monday, June 2, 1879, at 5.15 P. M., under chapter 160, acts of 1868." On May 26, 1879, a warrant was issued by the city clerk to one of the constables to notify the abutters on the brook, from Walnut Street to Laundry Brook, of the intention of the board of health to enter upon their premises for the purpose of widening, straightening and deepening said brook from Walnut Street, ward two, through Central Avenue, Craft and Adams Streets; and "that a hearing will be given by said board to all parties interested in the matter as to the necessity and mode of abating the nuisance caused by said brook, and the question of damages and of the assessment and apportionment of

the expenses thereof " at a time and place named.  The notice served not only states the intention of the board of health to enter upon their premises for the purpose of widening, deepening and straightening the watercourse from Walnut Street to Laundry Brook, and that a hearing will be had at a time and place named " in the matter of the abatement of a nuisance existing on Central Avenue, as to the necessity and mode of abating such nuisance, and the question of damages, and assessment and apportionment of the expense thereof," but also expressly declares that " this notice is given in accordance with the provisions of chapter 160 of the Acts of the Legislature for 1868."

We think it abundantly appears that the board were attempting to proceed under the St. of 1868, *c.* 160, and that the notice gave information that the board so intended to act, to all persons upon whom it was duly served.  It does not appear by the notice that the hearing was to be had upon the petition of Clark and others.  But a preliminary hearing, at which Clark appeared, had been had on May 5, when the matter was laid upon the table until the highway committee should report. This committee reported on May 19, 1879, after which the order to the city engineer was passed, and then the order to notify the abutters.  The petition of Clark and others did not, in terms, pray for anything, but it did describe a nuisance from stagnant water in a drain.  That petition was still before the board of health, and it was the same subject of which Clark and others complained on which the board took action, and on which a hearing was had.  The only reasonable construction of the petition is, that the petitioners wanted a hearing in order that the nuisance might be abated, and we think it fairly appears that it was on this petition, as a basis of action, that the board proceeded.  Reasonable certainty is undoubtedly required in the proceedings of a board of this character, as well as a substantial compliance with the statute; but technical exactness cannot be expected, and ought not to be required.  See *Westport* v. *County Commissioners,* 9 Allen, 203.

The hearing was had on June 2, 1879, after which the following order was adopted : " Ordered by this board, that the city engineer, under the direction of a committee consisting of Aldermen Edmunds, Barnes and Eldredge, be and is hereby authorized

and instructed to widen, deepen and straighten the watercourse running from Walnut Street through Central Avenue, Craft and Adams Streets to brook." Nothing important thereafter appears of record until October 6, 1879, when the committee reported "that said watercourse is finished as ordered." The committee recommended "that, in order to make said drain complete, the culvert across Pearl Street, in ward one, should be reconstructed, and the course of the present drain through land of Grace to Boyd's Pond should be changed by straightening, also deepened and widened."

Without examining at this point the action taken on this recommendation, it appears that subsequently the board of health assessed the damages sustained by widening, deepening and straightening the brook from Walnut Street to Laundry Brook, and also assessed upon the several persons benefited their proportionate share of the expense of widening, deepening and straightening the brook between these points, "on the basis of the city bearing the expense of the maintenance of the drain." These expenses amounted to $11,538.95, of which the sum of $4539.74 was ordered to be paid by the city, and $6999.21 by individuals, who are the petitioners in the petition of Fuller and others. Of these petitioners it appears that Michael Cavanagh, Michael C. Lucy, Francis E. Hamblin, William Waldron, Willard Gay and Alfred Tufts were not served with notice, as required by the statute, and John E. Chamberlain was not, unless he be an heir of Nathan B. Chamberlain, and this is not shown. The knowledge which these persons had after the final hearing of June 2, 1879, when the work was authorized to be done, is not equivalent to notice. It was not knowledge that the work was being done pursuant to the St. of 1868, c. 160; and that they were or might be subject to assessment. Besides, it was too late. The decision had then been made. They could not then prevent the execution of the work, or be heard upon the "necessity and mode of abating the nuisance."

It does not appear that there was any service of notice by posting or advertising in the public newspapers, or that the lands of these persons were unoccupied, and that they were unknown or without the State. St. 1868, c. 160, § 4. The proceedings as to them must be regarded as taken without notice.

Assessments upon land can lawfully be made only when the statute which authorizes them has been substantially complied with. The assessment was therefore void as to them. *Stone* v. *Boston*, 2 Met. 220. *Salem* v. *Eastern Railroad*, 98 Mass. 431, 449. *Northampton* v. *Abell*, 127 Mass. 507. *Nichols* v. *Salem*, 14 Gray, 490. *Hancock* v. *Boston*, 1 Met. 122. *Lowell* v. *Hadley*, 8 Met. 180. *Pickford* v. *Mayor & Aldermen of Lynn*, 98 Mass. 491. *Fitchburg Railroad* v. *Fitchburg*, 121 Mass. 132.

The remaining objections taken in the petition of Fuller and others cannot avail, if the nuisance was one that the board of health could abate under the St. of 1868, *c.* 160. One objection is, that the powers of the board of health were delegated to a committee. But § 5 authorizes the board to cause the nuisance to be abated according to its discretion. The board could do the work by agents, and their performance of it has been in effect ratified by the board. *Hitchcock* v. *Galveston*, 96 U. S. 341.

Another objection is, that the expenses were not assessed proportionally upon all persons benefited, and that items were included in the expenses that ought to have been excluded. This is a matter for abatement, if the petitioners have been assessed more than their proportionate share. *Whiting* v. *Mayor & Aldermen of Boston*, 106 Mass. 89. No new notice was necessary of an intention to make the assessments. *Prince* v. *Boston*, 111 Mass. 226. The report of the committee of January 2, 1880, upon the assessment of damages and benefits, was that they were made " on the basis of the city bearing the expense of the maintenance of said drain." The acceptance of the report, and the passage of the orders and of the warrants to the city treasurer accompanying it, — which were drawn in accordance with the report, — must be held to be an adoption of the report, and an adjudication that the expense of keeping the drain in repair shall be borne by the city.

Another objection is, that the assessment was void for uncertainty, not in respect to the persons, but in respect to the real estate benefited thereby. It appears by the answers of the respondent, " that the assessments were in fact made upon them " (the petitioners) " as owners of the parcels of land described in schedule 'A,' hereto annexed, and that the same were exhibited

upon a plan drawn in 1879 by Albert F. Noyes, city engineer of Newton; that said plan plainly designated the several lots of land for which said petitioners were severally assessed, and supplied and constituted a sufficient description of said premises; that said plan was before said board of health before and at the time of making such assessments; and that the description of said lots which were so assessed by said board were as exhibited in said schedule 'A,' to which the respondent asks leave to refer." A part of this may be taken as a certificate of the proceedings of the board. It is found by the justice who heard the cause that the descriptions contained in schedule "A" were written out after the commencement of these proceedings. The only action of the respondent with reference to this schedule was to annex the same to its answers. A copy of the plan is before us. The plan designates the lots with the names of the owners. It does not in the case of every individual designate all the boundaries of his lot. Apparently enough appears upon the plan to identify in each case the lot of land. The statute has no provisions relating to the manner in which the real estate benefited shall be described. If any assessments were not sufficiently specific by reason of the want of a description of the real estate benefited, we think it was competent for the board of health to extend or amend its record, and this schedule "A" may be taken to be such an extension or amendment. *Gloucester* v. *County Commissioners*, 116 Mass. 579, 581.

There remains the question, whether the proceedings are not altogether void, on the ground that the subject matter was not within the purview of the St. of 1868, c. 160. The petition of Clark and others described a nuisance "owing to large quantities of stagnant water standing in an open drain between Walnut Street and Central Avenue." However meagre and inadequate this description is, the nuisance described is of a kind covered by the statute. It does not appear whether this was a public or private drain. Clark, in his letter to the board of health of June 2, 1879, calls it "the ditch you caused to be dug through my land." It does not appear for what purpose the drain was made. In the orders of the board of health it is sometimes called a watercourse and sometimes a brook. A view of the premises might show that the nuisance could only be

properly abated by the exercise of the powers conferred by the statute. The plan shows apparently a watercourse. It perhaps may be assumed that it was a watercourse which drained the adjoining lands. On such facts as are before us, we cannot say that the nuisance was not such as could be abated pursuant to the St. of 1868, c. 160. As the persons who had notice were distinctly informed that the board of health were proceeding under the St. of 1868, c. 160, it was their duty to make this objection at the hearing. Having neglected to do this, they cannot now, after the work has been finished, the benefits received, and the expenses incurred, avail themselves of this objection for the purpose of quashing the proceedings, unless it appears that the nuisance was not within the statute. *Whately* v. *County Commissioners*, 1 Met. 336. The result is, that the assessments set out in the petition of Fuller and others as made upon Michael Cavanagh, Michael C. Lucy, Francis E. Hamblin, William Waldron, Willard Gay, Alfred Tufts, and John E. Chamberlain are void, because they are persons affected by the proceedings, and were not served with notice of the hearing.

The petition of James Grace and others relates solely to the improvements made between Laundry Brook and Boyd's Pond. The first intimation of the necessity or propriety of making these improvements is found in the report of the committee of October 6, 1879, which was after the order to widen, deepen and straighten the watercourse from Walnut Street to Laundry Brook had been executed, and the watercourse "finished as ordered." The respondent in its answer says that the extension was "made as a necessary part and consequence" of the work originally undertaken. It is unnecessary to consider whether, if, after the completion of the work to Laundry Brook pursuant to the original order, it had then been found necessary to continue it to Boyd's Pond, the petition of Clark and others would have been a sufficient basis for proceeding further. No notice whatever was ever given of any intention to widen, deepen and straighten the watercourse below Laundry Brook. The preceding notice expressly limited the intention of widening, deepening and straightening the watercourse to Laundry Brook. The order to straighten, widen and deepen the watercourse below Laundry Brook, from the culvert on Pearl Street

to Boyd's Pond, was passed on October 6, 1879. No reference is made to the St. of 1868, *c.* 160. No hearing was ever had upon the necessity or mode of making this extension. The agreements made with James Grace and Catherine Grace in regard to the details and course of the work, and their knowledge that it was done under some authority of the city of Newton, cannot cure the want of notice which the statute requires. This all occurred after the order was passed, and they had no knowledge that the board of health intended to make assessments on their real estate, or were attempting to proceed under this statute. The same is true of Mrs. Mary B. Potter. The record itself does not show that, in passing that order, the board were acting or attempting to act under the St. of 1868, *c.* 160. The assessments are therefore void.

Writs of certiorari must therefore issue for the purpose of quashing the assessments upon those persons who received no notice.                                        *Ordered accordingly.*