CARRIE D. P. WHITTEN & another *vs.* CITY OF HAVERHILL.

Essex.   November 5, 1909. — January 6, 1910.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Haverhill. Municipal Corporations. Sewer. Statute,* Repeal. *Practice, Civil,*
Exceptions, Ordering verdict, Requests for rulings. *Seashore. Flats.*

The charter of the city of Haverhill in St. 1869, c. 61, § 24, gave to that city " authority to cause drains and common sewers to be laid down through any street or private lands," there being at the time of the enactment of that charter no general law authorizing cities or towns to lay out sewers through private lands. In the year 1880 the city council of Haverhill passed an order " That the committee on streets be authorized to contract for the building of a sewer on Washington St. from R. R. Crossing to Bartlett St. According to the plan of sewerage." Undertaking to act under authority of this order, the city constructed a branch sewer from a manhole in Washington Street across a lot of land belonging to a private owner to the Merrimack River, and the owner of the land brought an action of tort against the city for damages from the deposit of sewage upon his land. To show that the order above named authorized the laying of the branch sewer through the plaintiff's land, the defendant put in evidence a report of a " special committee to prepare system of sewerage," but the report did not describe any sewer running through the plaintiff's land. The defendant did not contend that its charter authorized the laying out of a sewer through private lands without a writing, but argued that this defect was cured by a red line on a signed plan put in evidence by the plaintiff as a plan of the sewer. This plan was without a date and purported on its face to be a plan made to show the work which the city contracted to have done under the vote. It was not referred to in the vote of the city council and there was no reason to suppose that it was in existence when that vote was passed. *Held,* that the order of the city council in the year 1880 was not a valid laying out of the sewer through the plaintiff's land; and that it was not necessary to decide whether the provisions in § 24 of the defendant's charter about drains and sewers were repealed by St. 1869, c. 111, a general law regulating the right to lay out sewers through private lands.

In an action of tort against a city for unlawfully constructing a sewer through the plaintiff's land and depositing sewage thereon, where the defendant offered in evidence an order passed by its city council, which it contended was a laying out of the sewer through the plaintiff's land under a provision of the defendant's charter, the defendant's counsel in offering the order in evidence, at first said, "I offer this lay-out of the Washington Street sewer for this limited purpose of showing that we put in a sewer in 1880 which started from this old drain for the purpose of showing our use, under a claim of right commencing in the year 1880." Later he said that he offered the order as a "sufficient" lay-out "under the laws then in force." The presiding judge finally said, "I do not think that these papers establish the laying out of this particular sewer, and if they are admissible I should only admit them for what I have suggested. If they in any way establish the date when this sewer was used by the city, or built by the city, then they may be competent for that purpose, and that only. I will save your exception, if you desire one." *Held*, that the only ruling made and excepted to was a ruling that the papers offered did not show a valid lay-out through the land of the plaintiff, and that it was not open to the defendant on its exception to contend that the order of the city council was admissible to show that the sewer was constructed under a claim of right and that the judge was wrong in not admitting it for that purpose.

In an action of tort against a city for unlawfully constructing a sewer through the plaintiff's land and depositing sewage thereon, if the defendant relies on the defense that it had acquired a prescriptive right to maintain the sewer before the action was brought, the burden is on the defendant to prove this defense, and, in the absence of an admission by the plaintiff as to facts or evidence, no ruling can be made that as matter of law the defendant had acquired such a prescriptive right, especially where there is testimony tending to show that the sewer could not have been constructed twenty years before the bringing of the action as the defendant contended that it was.

The objection that an action cannot be maintained on the allegations contained in a certain count of a declaration can be raised by a request for a ruling to that effect after the close of the evidence.

Although a city is not liable for injuries caused by its negligence in adopting a defective plan for a sewer, it is liable for constructing without authority a sewer which is designed to and does empty sewage on the land of a private owner.

Discharging filth, by means of a sewer constructed without authority and maintained without right, upon the beach or flats of a riparian landowner between high and low water mark is an actionable private wrong.

TORT, against the city of Haverhill, to recover damages resulting from the deposit of sewage upon the plaintiffs' land by the defendant by means of a branch sewer running from a sewer of the defendant in Washington Street in Haverhill through the land of the plaintiffs to the Merrimack River, with three counts which are described in the opinion. Writ dated September 20, 1905.

In the Superior Court the case was tried before *Bell*, J. The material facts shown by the evidence are stated in the opinion.

The defendant asked the judge to give, among others, the following instructions to the jury:

" 1. On the pleadings, as a matter of law, this action cannot be maintained on the first count of the declaration.

" 2. On the pleadings, as a matter of law, this action cannot be maintained on the second count of the declaration.

" 3. On the pleadings, as a matter of law, this action cannot be maintained on the third count of the declaration.

" 4. On all the evidence this action cannot be maintained on the first count of the declaration.

" 5. On all the evidence this action cannot be maintained on the second count of the declaration.

" 6. On all the evidence this action cannot be maintained on the third count of the declaration. .

" 7. The remedy, if any, of the plaintiffs or their predecessors in title for laying the sewer was a petition for damages to be assessed in the manner and upon the same principle as damages are assessed in laying out town ways at the time the sewer was laid.

" 8. On all the evidence the defendant had acquired a prescriptive right to maintain the sewer mentioned in the plaintiffs' declaration before the bringing of this action."

" 12. Assent of the landowners does not make the use permissive so as to prevent the defendant from acquiring a prescriptive right to maintain the sewer in its present location by adverse use."

" 14. By virtue of the passage of the order and building of the sewer under the authority thereof the defendant was acting under a claim of right and there is no sufficient evidence that the sewer was maintained on the plaintiffs' land under circumstances that would warrant the jury in finding a mere permissive use."

" 16. On all the evidence the plaintiffs are entitled to no more than nominal damages."

The judge refused to give any of the instructions requested as above, and submitted the case to the jury, who returned a verdict for the plaintiffs in the sum of $500. Upon the hearing of a motion made by the defendant for a new trial, the. plaintiffs remitted $400 of the amount of the verdict. The defendant alleged exceptions to the refusal of its requests for instructions.

There were also the following exceptions to the admission of evidence, which are referred to in the last paragraph of the opinion:

One Sargent testified for the plaintiffs that he was engaged in the real estate business, and that he had seen the land at the end of the sewer within six years before 1905, and had smelt the odor, which was the same as any sewer. He was asked the following question: " Would such a condition of things as you observed there during this six years interfere, in your judgment, with the value of the use of the property?" To this question the defendant objected on the ground that there was no allegation of loss of tenants or that the premises were less rentable or that the rental value had been depreciated; but the presiding judge, against the objection and exception of the defendant, permitted the witness to testify, " that it would to a certain extent " in the way that any nuisance would interfere with any property. He further was allowed, against the objection and exception of the defendant, for the purpose of getting at the reasons of his previous opinion, to testify that the existence of a sewer creating such a nuisance as he saw would tend to diminish the character of the use and value of the buildings that would be put upon the land, but that he did not consider himself competent to express an opinion as to the amount of the damage. He further was asked the following question: " Would it affect the character, in your judgment, of tenants that would be — and the nature of business that would be done upon the premises, the nature of a nuisance like that?" The defendant objected to this question on the ground that it did not appear that the premises were fitted for a better class of tenants than were occupying them, but the presiding judge, against the objection and exception of the defendant, permitted the witness to answer as follows: " Yes, it would. It would make a difference, of course, as I once said, as any nuisance. I consider that a nuisance to a certain extent, and all the rest of sewers I ever had anything to do with across land that was occupied, and I should say that it would affect in the way that you would not get certainly so much rent for your premises."

*E. S. Abbott*, (*G. M. G. Nichols* with him,) for the defendant.
*J. P. Sweeney*, for the plaintiffs, submitted a brief.

LORING, J.   This is an action of tort brought by owners of land in the city of Haverhill, abutting on the Merrimack River, for damage done to it by the discharge of filth from a sewer built and maintained by that city.

The plaintiffs' land is some two hundred and forty feet deep, fronting on Washington Street and backing on the river.   The sewer in question is built from a manhole in Washington Street, across the whole depth of the lot, and discharges on the plaintiffs' land and so into the Merrimack River.   Thirty acres of a densely populated community are drained by this sewer.

As we understand the three counts of the declaration, they are as follows :

In the first count the plaintiffs allege that the defendant city unlawfully constructed the sewer on its land, that it has caused large quantities of sewage to be deposited " upon the premises of the plaintiffs," and that this sewage and the sewage deposited in the Merrimack River have diminished the depth of water so as to interfere with the plaintiffs' access to the land from the river.

In the second count they allege that sewage is deposited by this sewer " upon the land of the plaintiffs " rendering the upland "unhealthy and offensive" and depreciating its value for habitation and use generally.

In the third count the plaintiffs allege that " the sand and filth which is deposited by said sewer upon their premises " fills up the river, rendering it impossible to bring a boat drawing any considerable amount of water to the plaintiffs' land and making it a matter of large amount of money to " dredge out the stream in front of " the plaintiffs' land.

The land in question descended to the plaintiffs on the death of their father in 1878.

1. To prove that the sewer over the plaintiffs' land was legally laid out, the defendant offered in evidence an order of the board of aldermen of the defendant, dated June 23, 1880, concurred in by the common council on the same day in these words: " Ordered: That the Committee on Streets be authorized to contract for the building of a sewer on Washington St. from R. R. Crossing to Bartlett St.   According to the plan of sewerage, the expense of the same to be charged to the appropriation for

Highways." In connection with this order the defendant also offered a petition to the aldermen and an extract from a "Report of Special Committee to Prepare System of Sewerage." The petition is not dated, but it appears to have been referred to the committee on streets on April 19, 1880. It was: "To have a sewer constructed in Washington Street District No. 2 from the Boston and Maine R. R. to the 'summit line' near the Currier School House; as per report of Consulting Engineer to Committee on Sewerage Sept. 17th, 1877, page 23." The extract offered by the defendant with the order of June 23 was in these words (following the heading stated above):

"Page 23."

"Washington Street District Number Two."

"The outlet of the main sewer of this district is located at the railroad bridge. Thence the sewer runs northerly to the manhole chamber at the centre of Washington Street. From this chamber two main lines diverge; one up Washington Street to the Square, at a manhole chamber opposite High Street; the other up Washington Avenue," etc.

The presiding judge ruled that the order of the city council, whether taken alone or with the other documents, did not constitute a lay-out of other sewers by the city council over the plaintiffs' land and excluded them as evidence of that fact, but he admitted them as evidence of the date when the sewer was built.

It is provided in the charter of the defendant that "The city council shall also have authority to cause drains and common sewers to be laid down through any street or private lands, paying the owners such damage as they may sustain thereby, such damage to be assessed in the same manner and upon the same principles as damages are assessed in the laying out of town ways." St. 1869, c. 61, § 24.

When this charter was granted to the defendant city on March 10, 1869, there was no general law authorizing cities or towns to lay out sewers through private lands. The first act allowing a public sewer to be laid out by cities or towns at all was St. 1841, c. 115. That did not provide for their being laid out in private land. By St. 1857, c. 225, authority was given to the city of Boston to lay out sewers in private lands and gen-

eral authority to do so was given by St. 1869, c. 111, enacted on
March 26, 1869, sixteen days after the charter here in question
was granted to the defendant city.

There is a provision in the charter of the city of New Bedford
(St. 1847, c. 60, § 14) like that in the charter of the defendant
city. It provides that " the city council shall have authority to
cause drains and common sewers to be laid down through any
street or private lands, paying the owners such damage as they
may sustain thereby." The question arose in *Bennett* v. *New
Bedford*, 110 Mass. 433, whether an order for the construction
of " a sewer through Willis Street, commencing at the brook
west of County Street, and continuing to the river " was a valid
lay-out of a sewer under that charter. It was objected that the
vote was not sufficiently specific and definite. But it was held
that it " sufficiently defines its [the sewer's] location," and that
the lay-out was legal.

The lay-out of the sewer there in question was a lay-out
through a street, not through private land; and its location was
defined by the fact that it was to be constructed " through
Willis Street, commencing at the brook west of County Street,
and continuing to the river."

But in the case at bar the order is for a sewer " on Washing-
ton Street from R. R. Crossing to Bartlett St." That does not
touch on the plaintiffs' land. The defendant's contention is
that the plaintiffs' land is covered by the words " according to
the plan of sewerage," taken in connection with the extract
from the " Report of Special Committee to prepare System of
Sewerage " stated above. But all that is stated there is that
" The outlet of the main sewer of this district is located at the
railroad bridge." It does not state which side of the railroad
bridge the outlet is located, nor does it state which side of the
railroad " the manhole chamber at the centre of Washington
Street " is to be located. These papers taken together do not
specify whether the sewer between Washington Street and the
river is to be on the plaintiffs' land on their side of the railroad
or on the other side of the railroad on the land of some one else.
More than that, if the sewer was to run through the land of the
plaintiffs from the manhole chamber at the centre of Washing-
ton Street to the river, there was nothing to show which part of

the plaintiffs' land was taken or the width of the part taken. Such a lay-out was not a valid taking of the plaintiffs' land. The case comes within cases like *Warren* v. *Spencer Water Co.* 143 Mass. 9; *Wilson* v. *Lynn*, 119 Mass. 174; *Hinckley* v. *Hastings*, 2 Pick. 162.

It has not been argued that the charter authorized the lay-out over private lands without a writing, as has been held in case of statutes authorizing the taking of water. See *Bryant* v. *Pittsfield*, 199 Mass. 530.

The defendant has argued that this defect is cured by a red line on the signed plan put in evidence by the plaintiffs as a plan of the sewer. But that plan is without a date and on its face purports to be a plan made to show what the work was which the city contracted to have done under the vote. It is not referred to in the vote of the city council and there is no reason to suppose that it was in existence when that vote was passed. The defective description cannot be helped out by putting that in evidence. *Wilson* v. *Lynn*, 119 Mass. 174.

The defendant has contended that the legality of the lay-out cannot be impeached collaterally, and relies on *Foley* v. *Haverhill*, 144 Mass. 352, and cases cited; *Commonwealth* v. *Abbott*, 160 Mass. 282, 286; *Atkinson* v. *Newton*, 169 Mass. 240, 249; and *Stowell* v. *Board of Public Works*, 184 Mass. 416. The action in the case of *Foley* v. *Haverhill* was an action to recover a sewer assessment, and *Commonwealth* v. *Abbott* was a complaint for failing to connect his house with the sewer when ordered to do so by the board of health. *Atkinson* v. *Newton* was a petition for certiorari. *Stowell* v. *Board of Public Works* alone is a case where the defendant in an action of trespass undertook to justify for an entry on the land. But the only defect there in question was a failure in the lay-out of a highway to specify the time within which the owner could remove his walls, fences and trees. In the case at bar, as in *Wilson* v. *Lynn*, 119 Mass. 174, there was no valid lay-out at all over the land in question.

As we have come to the conclusion that the order of June 23, 1880, was not a valid lay-out of a sewer over the plaintiffs' land, it is not necessary to come to a decision on the question expressly left open in *Commonwealth* v. *Abbott*, 160 Mass. 282, 284,

to wit, Were charters like the charter of New Bedford, St. 1847, c. 60, § 14; of Lynn, St. 1850, c. 184, § 15; and of the defendant city, St. 1869, c. 61, § 24, repealed by St. 1869, c. 111, regulating the right to lay out sewers through private lands?

2. The defendant has further contended that this order of the city council was admissible to show that the sewer was constructed under a claim of right, and that the judge was wrong in not admitting it for that purpose. But after a careful consideration of the bill of exceptions we are satisfied that the presiding judge did not refuse to admit it for that purpose. When this evidence was offered there was a long colloquy between counsel and the judge. At the beginning of the colloquy counsel for the defendant did say: " I offer this lay-out of the Washington Street sewer for this limited purpose of showing that we put in a sewer in 1880 which started from this old drain for the purpose of showing our use, under a claim of right commencing in the year 1880." But later he said that he offered it as a " sufficient " lay-out " under the laws then in force." The presiding judge ended the colloquy with these words: " I do not think that these papers establish the laying-out of this particular sewer, and if they are admissible I should only admit them for what I have suggested. If they in any way establish the date when this sewer was used by the city, or built by the city, then they may be competent for that purpose, and that only. I will save your exception, if you desire one." No other ruling was made and no other exception was saved. The only ruling made and excepted to was that these papers did not show a valid lay-out over the land of the plaintiffs.

3. It was not possible to instruct the jury, as matter of law, that the defendant had acquired a prescriptive right, as requested in the eighth ruling asked for. The burden is on the defendant to make out that defense. In the absence of a presumption or of an admission by the other party as to facts or evidence, a verdict cannot be ordered in favor of a party who has the burden of proof and relies on evidence introduced by himself. See *Devine* v. *Murphy*, 168 Mass. 249; *Donahue* v. *Witherell*, 203 Mass. 489; *Lindenbaum* v. *New York, New Haven, & Hartford Railroad*, 197 Mass. 314. In addition there was testimony in the case at bar tending to show that the sewer could not have

been built over the plaintiffs' land in 1880, as the defendant contended that it was.

4. The next contention put forward by the defendant is that neither the second nor the third count sets forth a cause of action, and therefore that a verdict should have been rendered for it, as requested in its second and third requests for rulings. As to the rule of practice in such a case see *Murphy* v. *Russell*, 202 Mass. 480.

While it is true that for negligence in the plan of a sewer a city is not liable, *Child* v. *Boston*, 4 Allen, 41, it is also true that a city is liable for constructing a sewer which is designed to and does empty on to the plaintiffs' land. *Haskell* v. *New Bedford*, 108 Mass. 208. *Nevins* v. *Fitchburg*, 174 Mass. 545. It is alleged in the second count that the sewer discharged filth " upon the land of the plaintiffs," and in the third count " that the sand and filth which is deposited by said sewer upon their premises," etc.

5. The defendant has argued in support of his fifth request that it had a right to make these sewers and to discharge them into the river. Without going further, it is enough to dispose of this request to say that there was no evidence that this sewer had been legally laid out, and that it was for the jury to decide whether the defendant had acquired a prescriptive right to maintain it. The defendant has also argued that if anybody was entitled to damages it was the tenants. But it does not appear that the premises were in the possession of tenants during the entire time here in question. The evidence did not show exactly when the lease to Goodwin's brother expired. There was evidence that it expired in 1900 or 1901, and that the lease to Mrs. Whitten's husband began in 1902. If that be so, there was an interim when the plaintiffs were in possession.

6. The sixth request could not have been given. The third count alleges a deposit of filth on the plaintiffs' land and the shoaling of the river caused thereby; and there was some evidence to support this. The defendant's city engineer testified that the Merrimack River was navigable as far as this point, " that the tide has a rise of 4.6 feet," and " that the sewer is two feet above mean low water." This testimony related or could be found to relate to the conditions existing at the time of

the trial. This evidence also warranted a finding that the filth was discharged inside low water mark. By virtue of the colonial ordinance the plaintiffs' title goes to extreme low water, or to the river if the salt water entirely leaves the river at low tide. *Sewall & Day Cordage Co.* v. *Boston Water Power Co.* 147 Mass. 61. Filling up the flats of a riparian owner is a private wrong. For that reason the plaintiffs did not have to rely on a special damage for the public wrong of filling up the river, as was the case in *Brayton* v. *Fall River*, 113 Mass. 218.

7. There was evidence of damage and therefore the sixteenth request could not be given. The testimony of Sargent was admissible with respect to the time during which the premises were not under lease, and because the lease to Mrs. Whitten's husband was made within six years before the date of the writ.

*Exceptions overruled.*